**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JAMES D. WILSON,**

       **Plaintiff,**

**v.**                                       **Case No.: 3:10-cv-1317**

**MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,**

       **Defendant.**

## MEMORANDUM OPINION

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Claimant's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently before the Court on the parties' cross motions for judgment on the pleadings as articulated in their briefs. (Docket Nos. 10 and 13). Both parties have consented in writing to a decision by the United States Magistrate Judge. (Docket Nos. 11 and 12). The Court has fully considered the evidence and the arguments of counsel. For the reasons set forth below, the Court finds that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

## I.   Procedural History

Plaintiff, James D. Wilson (hereinafter "Claimant"), filed applications for SSI and DIB on April 10, 2008, (Tr. at 119–24), alleging a disability onset date of March 21,

2008 due to diabetes. (Tr. at 119, 123, 164). The Social Security Administration (hereinafter "SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 11). Claimant then filed a request for a hearing in front of an Administrative Law Judge (hereinafter "ALJ"), which was conducted by the Honorable David B. Daugherty on December 14, 2009. (Tr. at 23–34). By written decision dated January 10, 2010, the ALJ found that Claimant was not disabled under the provisions of the Social Security Act. (Tr. at 11–18). The ALJ's decision became the final decision of the Commissioner on September 18, 2010 when the Appeals Council denied Claimant's request for review. (Tr. at 1–3). Claimant timely filed the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. §405(g). (Docket No. 2). The Commissioner filed an Answer and a Transcript of the Administrative Proceedings, and both parties filed memoranda in support of judgment on the pleadings. (Docket Nos. 7, 8, 10, 13). Consequently, the matter is ripe for resolution.

## II.   <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A).

The Social Security Regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§ 404.1520, 416.920. The first step in the sequence is determining whether a claimant is

currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to prove, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* §§ 404.1520(g), 416.920(g). *See also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d 572, 574 (4th Cir. 1976).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2012. (Tr. at 13, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since March 21, 2008, the date of the alleged onset of disability. (*Id.*, Finding No. 2). Turning to the second step of the evaluation, the ALJ determined that Claimant had the following severe impairments: insulin dependent diabetes mellitus ("IDDM"); chronic obstructive pulmonary disease ("COPD"); and hypertension. (Tr. at 13–14, Finding No. 3). The ALJ further concluded that Claimant's alleged neuropathy of the feet and poor vision were not severe impairments. (Tr. at 13). Under the third inquiry, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments detailed in the Listing. (Tr. at 14, Finding No. 4). Accordingly, the ALJ assessed Claimant's RFC, finding that Claimant had the residual functional capacity to "perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) except occasionally climb ladders, ropes, and scaffolds and balance; and avoid concentrated exposure to fumes and hazards such as moving machinery and hazards." (Tr. at 14-16, Finding No. 5).

In comparing Claimant's RFC with the demands of his prior relevant employment as an auto parts salesman and clerk, the ALJ concluded that Claimant was unable to perform his previous work. (Tr. at 17–19, Finding No. 6). Accordingly, the ALJ proceeded to analyze Claimant's past work experience, age, education, and transferability of job skills in combination with his RFC to determine his ability to engage in other categories of substantial gainful activity. (Tr. at 17-18, Finding Nos. 6-10). The ALJ considered that (1) Claimant was born in 1956 and, at age 52, was defined

as an individual approaching advanced age (20 C.F.R. §§ 404.1563, 416.963); (2) he had a limited education and could communicate in English; and (3) transferability of job skills was not an issue. Using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, as a framework and considering the opinion of a vocational expert, the ALJ found that Claimant could successfully adjust to other employment positions at the level of light exertional work, which existed in significant numbers in the national economy; such as, machine tender and product inspector. (Tr. at 17-18, Finding No. 10). At the sedentary level, the ALJ found that Claimant could work as an assembler and hand packer. (*Id.*) Thus, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act. (Tr. at 18, Finding No. 11).

III.   **Scope of Review**

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. In *Blalock v. Richardson,* the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the totality of the record and determine whether substantial evidence exists to support the conclusion of the Commissioner. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). The decision for the Court to make is "not whether the claimant is disabled, but whether the ALJ's

finding of no disability is supported by substantial evidence." *Johnson v. Barnhart,* 434 F. 3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 2001)). If substantial evidence exists, then the Court must affirm the decision of the Commissioner "even should the court disagree with such decision." *Blalock,* 483 F.2d at 775. A careful review of the record reveals that the decision of the Commissioner is based upon an accurate application of the law and is supported by substantial evidence.

## IV.   <u>Claimant's Background</u>

Claimant was 52 years old at the time of the alleged disability onset date and 53 years old at the time of his administrative hearing. (Tr. at 32). Claimant had previous experience working as an auto parts salesman and clerk. (Tr. 25). Claimant had a high school education and was proficient in English. (Tr. at 163).

## V.   <u>Relevant Evidence</u>

The undersigned has reviewed the Transcript of Proceedings in its entirety, including the medical records in evidence, and summarizes below Claimant's medical treatment and evaluations to the extent that they are relevant to the issues in dispute.

### A.   Treatment Records

On June 13, 2006, Claimant presented to the office of Dr. Amy Albrecht of University Family Medicine for follow-up of his diabetes.[1] (Tr. at 304). Claimant reported that he used Lantus[2] every morning and had fasting blood sugars between 58 and 212. He admitted that he only experienced low blood sugars when he forgot to eat an evening snack before going to bed. Claimant also confirmed his continued use of

---

[1] This is the first office note contained in the record although the documentation reflects that Dr. Albrecht had a prior ongoing treatment relationship with Claimant.

[2] Lantus is a long-acting insulin product, which is administered by injection one time each day.  *See* www.lantus.com

Lisinopril to control chronic hypertension. Dr. Albrecht discussed with Claimant the signs of hypoglycemia and emphasized the importance of eating a high protein evening snack. She advised Claimant to continue taking his regular medications, to add a daily dose of aspirin, and to return in one month. (*Id.*)

On August 6, 2008, Claimant was examined by Dr. Samuel Stewart of University Physicians & Surgeons. (Tr. at 302). Claimant had no acute medical problems, but wished to establish primary care with Dr. Stewart. Claimant provided a medical history of having IDDM since 1970 for which he took Lantus daily. He stated that he was applying for disability benefits due to episodes of low blood sugar at work, but admitted that he did not check his blood sugars regularly. He complained of having numbness in his toes, which had been present for two months. When asked about other health problems, Claimant denied headaches, fever, chills, blurry vision, hearing loss, fatigue, shortness of breath, wheezing, gastrointestinal problems, bloody urine, muscle aches or weakness, dizziness, psychological symptoms, or skin rashes. (*Id.*) His physical examination was normal. Dr. Stewart diagnosed Claimant with Type 1 diabetes with poor control and poor compliance due to financial reasons. (Tr. at 303). Dr. Stewart documented his plan to contact social services to help Claimant obtain financial assistance for chronic disease management. He instructed Claimant to continue using Lantus and to return within one month. (*Id.*). On June 8, 2009, Dr. Stewart wrote a letter to "whom it may concern," stating, "Mr. Wilson is currently under my care for his medical problems and is physically able to perform the duties needed to work as an auto parts tech." (Tr. at 301).

The final treatment record supplied by Claimant memorializes an office visit with Dr. Stewart on September 30, 2009 for follow-up of chronic medical issues and for

prescription refills.  (Tr. at 299-300).  Claimant reported that he had been checking his blood sugars daily and they generally ranged between 100 and 150.  His blood pressure was elevated, but he denied having any related symptoms, such as headaches or blurry vision.  Dr. Stewart commented that Claimant had gone two years without an appointment and was told that he would not be given any additional prescription refills without an updated evaluation, which prompted his visit that day.  Dr. Stewart noted that Claimant's physical examination was essentially normal except for a blood pressure of 156/92.  (*Id.*).  Dr. Stewart diagnosed Claimant with diabetes and uncontrolled hypertension.  He increased Claimant's dose of Lisinopril and wrote a prescription for Lantus.  Dr. Stewart encouraged Claimant to take a daily aspirin and instructed him to return in two to three months.  (*Id.*).

### B.    Disability Evaluations

On May 9, 2008, Dr. Drew Apgar examined Claimant at the request of the West Virginia Disability Determination Section ("DDS").  (Tr. at 227-243). Claimant advised Dr. Apgar that he was disabled due to diabetes. Dr. Apgar recorded that Claimant took Lantus daily and used sliding scale insulin as needed to control periodic elevations of his blood glucose.  Claimant did not have other complications of diabetes, although he complained of some vision loss, which had not yet been linked to his diabetes.  Claimant reported a past history of COPD and gastroesophageal reflux disease ("GERD").  (Tr. at 228-229). A ventilatory function report confirmed that Claimant had mild COPD and moderate restrictive pulmonary disease.   (Tr. at 256-259). On a review of systems, Claimant admitted some generalized weakness and heartburn, but denied the following: fatigue or other systemic symptoms; neurological symptoms; psychiatric symptoms; shortness of breath; sleep apnea; urinary problems; musculoskeletal pain, weakness or

spasms; or cardiac symptoms.  After completing a thorough examination, Dr. Apgar diagnosed Claimant with IDDM by history; mild COPD; GERD by history; and vision loss by history. Dr. Apgar opined that based upon the objective findings, Claimant would have no difficulty standing, walking, sitting, lifting, carrying, pushing, pulling, handling objects, hearing, speaking, or traveling. He observed no exertional or non-exertional limitations.  (Tr. at 238).

On May 28, 2008, Dr. Porfirio Pascasio completed a Physical Residual Functional Capacity Assessment of Claimant. (Tr. at 245-52). Dr. Pascasio found no exertional, postural, manipulative, visual, communicative, or environmental limitations. (*Id.*).  He noted that Claimant was able to independently care for his personal needs, prepare meals, clean house, drive, shop, and walk at least ½ mile without stopping. (Tr. at 252).

A second Physical Residual Functional Capacity Evaluation was completed by Dr. Rafael Gomez on August 25, 2008. (Tr. at 260-67).  Dr. Gomez concluded that Claimant could occasionally lift and carry 50 pounds; could frequently lift and carry 25 pounds; could stand, sit and walk, each, six hours out of an eight hour work day; and had no restrictions on his ability to push or pull.  He opined that Claimant had some minor postural limitations, primarily with balancing and stooping, but had no visual, manipulative, or communicative limitations. (*Id.).* Dr. Gomez recommended that Claimant avoid concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas and also avoid concentrated exposure to hazards like machinery and heights. He found Claimant to be credible and felt that his daily activities were consistent with a medium exertional level RFC.  (Tr. at 265).

Dr. Apgar performed an updated physical examination of Claimant on May 15, 2009 at the request of DDS.  (Tr. at 272-87).  On this occasion, Claimant complained that hypertension and swelling of the feet, in addition to diabetes, prevented him from working.  He reported greater difficulty controlling his diabetes, indicating that despite the daily use of Lantus and Humalog sliding scale insulin, his blood sugars ranged between 250-400. Claimant further stated that his past medical history now included joint pain and peripheral neuropathy related to diabetes. Other than some coarseness in Claimant's lungs, Dr. Apgar's physical examination was essentially normal. He reiterated that Claimant should have no difficulty standing, walking, sitting, lifting, carrying, pushing, pulling, handling objects, hearing, speaking, and traveling did not change.  (Tr. at 283).

After finishing the physcial examination of Claimant, Dr. Apgar completed a Medical Source Statement of Ability to do Work-Related Activities (Physical).  (Tr. at 288-295).  Dr. Apgar found that Claimant could lift and carry up to 50 pounds continuously and 100 pounds frequently; he could sit four hours in an eight-hour work day, up to two hours without interruption; he could stand and walk two hours, each, out of an eight-hour work day, up to one hour without interruption; he could reach, handle, finger, fell, push, pull, operate foot controls, climb stairs, ramps, ladders, and scaffolds without limitation; he could frequently stoop, kneel, crouch, and crawl; but he should avoid humidity and wetness, dust, odors, fumes, pulmonary irritants, and extreme heat and should somewhat limit his exposure to vibrations, extreme cold and loud noises such as heavy traffic.  (*Id.*).

## VI.   __Claimant's Challenges to the Commissioner's Decision__

Claimant argues that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) failed to expressly consider the medical source statement prepared by Dr. Apgar after his second examination of Claimant; and (2) failed to fully consider the effects of Claimant's diabetes.  (Docket No. 10 at 9-13). The Commissioner responds by arguing that the RFC determination adopted by the ALJ was considerably more limited than the medical source statement of Dr. Apgar; accordingly, remand for a reconsideration of that statement would be futile.[3] The Commissioner additionally contends that the ALJ fully considered Claimant's diabetes, as did all of the medical experts, and the objective medical findings substantially support the Commissioner's determination that Claimant is not disabled. (Docket No. 13 at 7-13).

## VII.   __Analysis__

The Court agrees with the Commissioner that remand for further consideration of Dr. Apgar's medical source statement would achieve nothing. When compared to the opinions of the other experts, Dr. Apgar's statement is, for the most part, consistent. Both Dr. Apgar and Dr. Gomez found Claimant capable of performing medium level exertional work, while Dr. Pascasio found no limitations in Claimant's ability to lift, carry, stand, sit, walk, push or pull. Dr. Stewart did not provide a detailed RFC assessment, but indicated in a letter that Claimant was "physically able to perform the duties needed to work as an auto parts tech."  (Tr. at 301). Dr. Gomez opined that Claimant was slightly more restricted in balancing and climbing ladders, ropes and scaffolds than did Dr. Pascasio and Dr. Apgar, but all three physicians agreed that

---

[3] The Commissioner further observes that Claimant's criticism is "perplexing."  The Court agrees.  On the one hand, Claimant complains that the ALJ did not expressly weigh Dr. Apgar's medical source statement while, on the other, he disagrees with the opinions Dr. Apgar expressed in that statement.

Claimant had no manipulative, visual, or communicative limitations. The primary difference of opinion in the three RFC assessments involved the nature and extent of Claimant's environmental limitations; however, this difference was not particularly singificant. Dr. Apgar felt that Claimant should avoid humidity, wetness, dust, odors, fumes and extreme heat; Dr. Gomez stated that Claimant should avoid concentrated exposure to dust, odors, fumes and hazards like machinery and heights; and Dr. Pascasio found no need for restrictions at all.  In any event, the ALJ's written decision confirms that he took these opinions into account, specifically noting that Dr. Apgar had twice assessed Claimant and found no major limitations. The ALJ also considered and, to a certain extent, incorporated the testimony of Claimant into the RFC assessment. The ALJ ultimately determined that the limitations identified by Dr. Gomez were reasonable in light of the objective medical findings. Nevertheless, the ALJ explicitly gave Claimant's testimony "the benefit of the doubt" and further reduced Claimant's exertional level from medium to light work for purposes of analyzing jobs that could be performed by Claimant. (*Id.*). The Court finds that the ALJ adequately considered the medical opinions of record and crafted an RFC assessment that fairly reflected Claimant's ability to do work-related activities. To the extent that the ALJ failed to discuss Dr. Apgar's second examination and medical source statement in more detail, the Court finds this error to be harmless. Dr. Apgar's objective findings and medical source statement do not significantly contradict the other opinions and are consistent with the RFC assessment used by the ALJ.

Courts have applied a harmless error analysis in the context of Social Security appeals.  One illustrative case provides:

> Moreover, "[p]rocedural perfection in administrative proceedings is not
> required. This court will not vacate a judgment unless the substantial
> rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364
> (5th Cir.1988). The procedural improprieties alleged by [claimant] will
> therefore constitute a basis for remand only if such improprieties would
> cast into doubt the existence of substantial evidence to support the ALJ's
> decision.

*Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *See also Fisher v. Bowen*, 869 F.2d

1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense

requires us to remand a case in quest of a perfect opinion unless there is reason to

believe that the remand might lead to a different result"). The Fourth Circuit Court of

Appeals has taken the same approach, in a number of unpublished decisions. *See*, *e.g.*,

*Bishop v. Barnhart*, No. 03-1657, 2003 WL 22383983, at *1 (4th Cir. Oct 20, 2003);

*Camp v. Massanari*, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec 27, 2001);

*Spencer v. Chater*, No. 95-2171, 1996 WL 36907, at *1 (4th Cir. Jan. 31, 1996). Because

the opinions of the medical sources were consistent, the ALJ was not required to engage

in a lengthy discussion of the weight given to each opinion. *See* 20 C.F.R. §§ 404.1527(c)

and 416.927(c). Accordingly, the Court finds that the ALJ gave sufficient consideration

to the opinions and his RFC assessment was supported by substantial evidence.

Claimant's argument that the ALJ did not fully consider Claimant's diabetes is

equally unpersuasive. The majority of the medical evidence supplied by Claimant

involved his IDDM. The ALJ considered Claimant's IDDM at every step of the sequential

evaluation. The ALJ acknowledged this condition as a severe impairment, (Tr. at 13),

and then compared its attendant medical signs and symptoms to the severity criteria

contained in the Listing. (Tr. at 14). After confirming that Claimant did not meet or

medically equal the relevant listed impairment, the ALJ thoroughly discussed

Claimant's testimony and the objective medical findings pertaining to diabetes. (Tr. at

15-16). Contrary to Claimant's assertion, the medical records produced by Claimant did not suggest that he has "increased problems" that have "crept up on his [sic] gradually." (Docket No. 10 at 12). Instead, the medical records revealed that when Claimant ate appropriately and took his medication religiously, he was able to control his blood sugars.  No physician diagnosed Claimant with diabetic neuropathy or retinopathy and his physical examinations did not support such diagnoses. To the contrary, Claimant's physical examinations were invariably normal and his treatment was conservative. In fact, the record of Claimant's office visit with Dr. Stewart on September 30, 2009, which occurred four months after Dr. Apgar's second examination of Claimant and six weeks before the administrative hearing, documented that Claimant felt his blood sugars "have been doing well." (Tr. at 299). Dr. Stewart did not note uncontrolled glucose readings or signs and symptoms consistent with complications of diabetes. Claimant was able to perform his personal grooming; clean the house; do the laundry; take care of pets; socialize; attend his son's athletic practices and events; cook meals; do the shopping; drive a car; watch television; read the newspaper; and make physician appointments. (Tr. at 201-208).  To justify an award of disability benefits under the Social Security Act, Claimant must show an inability to engage in substantial gainful activity due to a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423(d)(1)(A). Claimant simply has not met that burden of proof.

## VIII.  <u>Conclusion</u>

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Therefore, by Judgment

- 14 -

Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of record.

**ENTERED:**  November 7, 2011.

Cheryl A.  Eifert
United States Magistrate Judge